Price, J.
We have been somewhat embarrassed in the preparation of this opinion by loss from the files of some of the original papers, including the affidavit and bill of exceptions. It is believed that the absence of these documents is not the fault of either party, and we proceed to an examination of the only question presented to us in the briefs of counsel and such record as we find at hand.
It seems to he agreed between counsel for the respective parties to this proceeding, that the affi *34 davit before the mayor charged Ridgway with the violation of sections 4364-20a, 4364-206 and 4364-20c, Revised Statutes, which sections are a part of what is commonly known as the Beal law.
Section 4364-20a provides when a petition of electors of a municipal corporation may be filed with the council, asking the privilege of determining by ballot, whether the sale of intoxicating liquors as a beverage shall be prohibited within such corporation, and fixes the number of petitioners necessary to give the council authority to act. It also provides for the calling of the election on such petition, the notice therefor; the manner of holding and conducting the election, and the mode of ascertaining and recording the result.
Section 4364-206 prescribes the form of the ballot to be cast at the election, and further provides that “if a majority of the votes cast at such election shall be in favor of prohibiting the sale of intoxicating liquors as a beverage, then from and after thirty days from the date of holding said election, it shall be unlawful for any person, personally or by agent, within the limits of such municipal corporation, to sell, furnish or give away any intoxicating liquors to be used as a beverage, or to keep a place where such liquors are kept for sale, given away, or furnished for beverage purposes; and whoever, from and after the thirty days aforesaid in any manner directly or indirectly sells, furnishes, or gives away, or otherwise deals in any intoxicating liquors as a beverage * * * shall be guilty of a misdemeanor, and shall, on conviction thereof, be fined not more than two hundred dollars, nor less than fifty dollars for the first offense * * It is also provided in the same section, that manu *35 faeturers of intoxicating liquors from the raw material may sell to retailers in wholesale quantities, etc.
It is next provided in section 4364-20c that “nothing in this act shall be construed to prevent the selling of intoxicating liquors at retail by a regular druggist for exclusively known medicinal, pharmaceutical, scientific, mechanical or sacramental purposes; and when sold for medicinal purposes, it shall be sold only in good faith upon written prescription issued, signed and dated in good faith by a reputable physician in active practice, and the prescription used but once * *
We must assume for the purposes of this proceeding that a petition had been presented to the council of the municipal corporation signed by the requisite number of electors; that an election was held as required by the statute and that it resulted in a majority of votes being cast in favor of prohibition of the sale of intoxicating liquors within the corporate limits, and that its results were made a matter of record as the law directs. When all these steps had been taken, it became unlawful for any one after the expiration of thirty days from the holding of such election, to sell intoxicating liquors within the corporate limits as a beverage save under the circumstances made exceptions by the latter clause of section 4364-206 and the provision of section 4364-20c above quoted.
The charge before the mayor against Ridgway, as we gather from the record and briefs before us, was not for keeping a place, structure, etc., in which or from which intoxicating liquors were unlawfully sold, but that he unlawfully sold intoxicating liquors within the corporate limits at a certain time to be *36 used as a beverage, without alleging the name of the purchaser. On account of this omission, the circuit court held the affidavit fatally defective. In so holding did that court err?
In answering this question, we are justified in a retrospect of some of the temperance legislation of the state and the practice thereunder, because if the question we are considering could or did arise under former statutes regulating the sale of intoxicating liquors, the judicial decisions, if any, and the settled practice under the former statutes on the same subject, ought to be of assistance in the present controversy. It has been truly said that this court has never had occasion to decide this precise question, and we think the reason can be found in the fact, that the uniform practice seems to have' been to allege in the affidavit information or indictment, the name of the purchaser when the seller was charged with a single sale. We have no doubt that so general and uniform was this practice, that no occasion was afforded to raise the question in this court, although many other controversies arose over other phases of the legislation.
That we may be clearly understood, let us turn to the act of May 1, 1854, S. & C. Revised Statutes, vol. 2, p. 1431. The act is entitled “An act to provide against the evils resulting from the sale of intoxicating liquors in the State of Ohio. ’ ’
Section 1 provided “That it shall be unlawful for any person or persons by agent or otherwise, to sell in any quantity, intoxicating liquors, to be drank in, upon, or about the building or premises where sold * * * > > The second section prohibited the sale of such liquors to minors, unless upon the written order of their parents, guardian, or family physician.
*37 The third section made it unlawful to sell such liquors to persons intoxicated or who are in the habit of getting intoxicated.
The fourth section provided that all places where intoxicating liquors are sold in violation of this act shall be taken, held and declared to be common nuisances. The fifth section made it unlawful for any person to get intoxicated. These were the penal sections of the act.
As a part of the act, section 12, p. 1435, the legislature prescribed a form of complaint which it declared to be sufficient in criminal proceedings under that act before justices of the peace and mayors, and the form is: “The State of Ohio...... County, ss. Before me A. B. (a justice of the peace of said county, or mayor, etc., as the case may be) personally came C. D., who being duly sworn according to law, deposeth and saith, that on or about the .... day......in the year .... at the county of ....... aforesaid, E. F. did sell intoxicating liquors to one G-. H. to be drank in the place where sold (or to Gr. H. a minor, etc., or to a person intoxicated, or in the habit of getting intoxicated, as the case may be, or, is the keeper of a room, or tavern as the case may be, where intoxicating liquors are sold in violation of law), and further deponent saith not.
“C. D.
‘ ‘ Sworn to and subscribed, ’ ’ etc.
Section 13 on same page provided that “in all prosecutions under this act, by indictment or otherwise, it shall not be necessary to state the kind of liquors sold, or to describe the place where sold, and for any violation of the fourth section (keeping a place, etc.), it shall not be necessary to state the name of any person to whom sold * *
*38 It need not be said that the above form was intended to be exclusive, but as deemed sufficient, and it must be noted that the form suggests at least, that a charge of violating either the first, second or third sections of that act, should contain the name of the purchaser of the liquors.
The first case that reached this court for a construction of the act of May 1, 1854, is reported as Miller & Gibson v. The State, 3 Ohio St., 476. While the question we are to decide was not involved in that case, the points settled shed some light upon it. It was there held among other things, that to convict for a violation of the second section, it was necessary to aver in the information (in probate court), and prove on the trial, that the seller knew the buyer to be a minor; and to convict for a violation of the third section, it was necessary to aver and prove, in like manner that the seller knew the buyer to be intoxicated, or in the habit of getting intoxicated. It seems that the controversy in that case did not involve the first section, for the prosecution was not under that section. This pioneer case has never been questioned, and it shows how the elements of the above form prescribed by the legislature were considered in arriving at the conclusions so announced. Then, when section 13 of the old statute provided that ‘ ‘ in all prosecutions under this act (May 1, 1854) by indictment or otherwise, it shall not be necessary to state the kind of liquors sold, or describe the place where sold; and that for a violation of the fourth section (keeping a place where sold — a nuisance) it shall not be necessary to state the name of any person to whom sold, we think it a fair inference, that for a violation of the first section —selling to be drank where sold — the name of the *39 buyer should be alleged in the affidavit, information or indictment, as the case may be, or an allegation excusing the giving of the name to the effect that it was unknown to the affiant, informant, or grand jury.
We are satisfied that an examination of every case that arose under this former act involving a conviction under the first, second or third sections thereof, and which reached this court for decision, involved a charge containing the name of the buyer of .the liquors. The form prescribed by the statute became a precedent that was universally observed so far as our recollection and research extend, and hence we say it became the settled practice throughout the state to allege the name of the buyer if known, in prosecutions for violation of the first, second and third sections. A long established and uniform practice is an authority of but little, if any, less weight than an adjudication to the same effect.
So we find in Manor’s Criminal Law, an Ohio authority published in 1857, and then of great value, on page 370, a form for a charge of selling liquors to be drank where sold, and the name of the buyer is deemed a necessary part of the charge. In 1857, another Ohio authority, Ohio Criminal Law by Warren, was published and became of general use in the state. It was revised in later editions. On page 649 of the edition of 1870 is found his form for a charge for illegally selling intoxicating liquors. The directions of these Ohio authors are not judicial decisions, but they show how the practice about which we have been speaking was moulded, and that the form prescribed by the legislature in that act has been observed uniformly so long as its provisions were in force.
*40 The first section of the act of 1854, afterwards known as section • 6941, Revised Statutes, was repealed April 17, 1883 (80 O. L., 167) and in an act passed May 14, 1886 (83 O. L., 161), the same section is again declared to be repealed. The other sections of the old act have in their substance been retained, and additional legislation from time to time, in regulation and restraint of the traffic has been enacted and numerous limitations have been placed upon it. But we think that where the sale of intoxicating liquors as a beverage is made unlawful under the present law, the same rule of practice still obtains.
The general provisions now regulating the traffic in intoxicating liquors are found in section'^ 6940 to 6950-1, inclusive, of Revised Statutes. In addition to these are the statutes providing for municipal and township local option, wherein the electors within such jurisdictions may, by a majority vote, prohibit the sale of liquors therein, except in certain excepted cases for certain excepted purposes named in the statute.
In the case before us, the vote of the majority has made the territory within the corporate limits prohibition territory, within which it was and is unlawful to sell intoxicating liquors to be used as a beverage. The charge is not that Ridgway kept a place where intoxicating liquors were being sold in violation of law, but that he sold intoxicating liquors within the corporate limits to be used as a,beverage, without alleging the name of the buyer or facts excusing the giving of such name. Thirty.days after the election, it became unlawful to sell for beverage purposes. If Ridgway made such a sale, he had a buyer, and if his name was known to the complaining party, it was not only proper, but we think necessary *41 to allege it in the affidavit. For the first offense at least, it seems the mayor has final jurisdiction, and the offense charged should be described with reasonable certainty. The rule of practice under the old statute, as we have found it, applies to its kindred provision of the present law as to single sales which it declares to he unlawful.
Section 7222, Revised Statutes, entitled “What are sufficient allegations in an indictment for unlawfully selling liquor,” provides that, “in an indictment under sections 6941, 6942, 6943, 6944, 6945, 6946, 6947 and 6948, it shall not be' necessary to allege the kind of liquor sold, nor to describe the place where sold, and in an indictment under said section 6942 (keeping a place, etc.), it shall not be necessary to allege the name of the person to whom intoxicating liquor was sold.” This section is now part of the criminal code, hut it had its root in old section 13 of the act of May 1, 1854, already quoted. WThy did not the legislature include in section 7222 the offense under consideration, if the rule of pleading was to he changed?
It will he observed that the section under which this prosecution was instituted (4364-20& and -c) is not named therein, and if béfore its passage, it was good pleading to allege the- name of the buyer as well as the seller of intoxicating liquors, the rule still remains. This must have been in the mind of the court when Gordon v. The State, 46 Ohio St., 607, was decided. That was a local option case under the township local option statute passed March 3, 1888. A motion was made to quash the indictment on the ground, (1) that it did not set forth the name or names of any person or persons to whom the sale of intoxicating liquors was made, and (2) that it was *42 objectionable for duplicity. The indictment alleged that the accused unlawfully sold intoxicating liquors as a beverage to divers persons whose names to the jurors were unknown. Dickman, J., said for the court, on page 625, “This we deem sufficient. In those cases in which the names of third persons cannot be ascertained, they may be thus designated, in the usual form ‘as persons whose names are to the jurors unknown.’ Thus, an indictment for harboring thieves unknown, is sufficient from the necessity of the case, upon the fair presumption, that the names cannot be discovered. And in indictments for assault and the like, the person injured or killed may be mentioned as unknown, if such is the fact. ’ ’
We think this statement of the law of criminal pleading is authority here, because if, in sales of liquor for use as a beverage, it is not necessary to allege the name of the buyer, it would have been so declared as a much shorter answer to the contention in that case. It held that the indictment was. good without naming the buyer if his name is unknown, and it is so alleged.
Counsel for the state in the able brief filed, cite a number of decisions made by the courts of other states, and we have examined them. There is one remark that is common to a majority of them, and it is, that they are cases where sales of intoxicating liquors were made without a license or permit. The State v. Schweiter, 27 Kan., 499, and The State v. Moseli, 49 Kan., 142, are of this character, and so with many other cases cited in behalf of the plaintiff in error. A few are not of that character. They did not decide the question we have, for there is a distinction between the acts involved in those cases where sales were made without a license or permit, *43 and the act of selling where no license or permit can be issued in order to legalize the sale. In the states where the decisions referred to were made, if the state or other proper authority granted a license for the sale of liquor, such license would be a defense, no matter as to the name of the purchaser. Selling without license constituted the gravamen of the offense, and the name of the person to whom sales were made was not material. Hence the difference in the decisions.
There is another observation worthy of note in this case. It is said that Eidgway is a druggist and was a druggist when he committed the offense. If he was a regular druggist and sold intoxicating liquors, he is protected, if he complied with the rule prescribed in section 4364-20c, and made the sale exclusively for known medicinal, pharmaceutical, scientific, mechanical or sacramental purposes. If the sale was made for medicinal purposes, in good faith upon the written prescription issued, signed, and dated in good faith by a reputable physician in active practice, and used but once, the sale was not unlawful.
If Eidgway was a druggist, as seems to be conceded, there is additional force in the claim that the name of the buyer should appear in the charge against him. A druggist is supposed, if not required, to file and preserve prescriptions which he has filled. When he is confronted with a charge of unlawfully selling intoxicating liquors, to one named in the charge, he is able to speedily ascertain whether he made the sale on the requisite prescription. If the name of the buyer is not alleged, the making of his defense is more difficult. This reason seems to be a very plain and reasonable one. It has received the *44 sanction of two Missouri cases. In State v. Cassity, 49 Mo. App. Rep., 300, on page 301, the court says: “The indictment does not in either count state the name of the person to whom the liquor was sold. We held in State v. Martin, 44 Mo. App., 45, that an information against a drug'gist under section 4621 of the Statutes, which fails to state the name of the person to' whom the liquor was sold by him is subject to be quashed on the defendant’s motion. We held this on the ground that in the case of a sale the druggist must rest his defense, if he has any, upon a prescription or ’prescriptions issued by a regularly registered physician of the state, and if the purchaser of the liquor is not named in the indictment, that defense becomes practically unavailable to him. That view was approved by the supreme court, to which we certified the case for its final determination .* * The supreme court of Missouri reviewed the case of State v. Martin, supra, in 108 Mo., 117, and held the same doctrine. For a clear and vigorous statement of the reasons for the rule, we refer to the opinion of that court by Thomas, J., on pages 119-120. They can be adopted here as entirely appropriate. A" brief quotation here is sufficient. “The statute contemplates that intoxicating liquors may be prescribed by physicians and used for medicinal purposes. Hence, the law authorizes their sale by all licensed druggists, provided the purchaser shall first procure a prescription therefor from a registered physician. When a druggist is indicted for a violation of this statute, he must rest his defense, if he has any, upon a prescription or prescriptions issued by a regular registered physician of the state. If the purchaser of the liquor is not named in the indictment how can such a defense *45 be made available to tbe accused? Until tbe defendant is thus advised, how can he make his plea ? How can he prepare for trial? Under what circumstances can he safely announce himself ready for trial? With no knowledge of the evidence upon which the state relies for a conviction, must he take with him to the trial all prescriptions filed during the year next preceding the indictment? And must he also prepare himself with the necessary proof that each prescription was signed by a registered physician? He may have prescriptions given by physicians in different and distant parts of the state. These are practical questions,” etc.
Counsel for the state cite and rely on Carper v. The State, 27 Ohio St., 572, and Roberts v. The State, 32 Ohio St., 171. The decision in the latter case is based on the reasoning of the court in the former case. Both cases arose on charges of violating the gaming statutes. A careful reading of Carper v. The State, supra, will show that the construction there given of the law against gaming for money, should not be applied as authority in the present case.
We conclude that the circuit court did not err in its judgment, and that judgment is affirmed.

Affirmed.

Davis, C. J., Crew, Summers and Spear, JJ., concur.